**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

ALEX WEHRSPANN,

            Plaintiff,

vs.

DUBUQUE COMMUNITY SCHOOL
DISTRICT; and KEYSTONE AREA
EDUCATION AGENCY,

        Defendants.

No. 15-CV-1029-LRR

**REPORT AND
RECOMMENDATION**

_____

TABLE OF CONTENTS

I.  Factual Background ............................................................................. 3

II.  Procedural Background ...................................................................... 6

III. Jurisdiction......................................................................................... 8

IV. Applicable Law ................................................................................. 9

  A.  Definitions.................................................................................. 9

  B.  Obligations Imposed Under IDEA ...................................... 10

  C.  Administrative Process .......................................................... 13

  D.  Transfer of Rights................................................................... 14

  E.  Judicial Review...................................................................... 15

V.  Legal Arguments ............................................................................ 16

  A.  Plaintiff's Arguments .............................................................17

   B.  Defendants' Arguments .................................................................19

VI. Discussion ................................................................................... 20

   A.  ALJ's Determination that Plaintiff Was Not a Child With a Disability ...........20

   B.  Statute of Limitations ...........................................................23

   C.  Attorneys' Fees and Costs ........................................................29

VII. Conclusion ................................................................................. 30

This action is an appeal from an administrative agency decision. Alex Wehrspann's parents brought an administrative action under the Individuals With Disabilities Education Act ("IDEA"), to which Mr. Wehrspann ("plaintiff") was ultimately joined, alleging that Dubuque Community School District and Keystone Area Education Agency (collectively, "defendants") violated plaintiff's rights under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, et. seq. ("IDEA"), as well as plaintiff's parents' rights under the same act. Following dismissal of the administrative due process complaint and the amended administrative due process complaint,[1] plaintiff filed his complaint in this Court (Doc. 1), appealing the administrative law judge's ("ALJ") order dismissing the two due process complaints (Doc. 8-2, at 35-40).

Between June 2016, and August 2016, the parties filed their briefs. (Docs. 11, 13, 14, 17). On August 15, 2016, the Court deemed this case fully submitted and ready for decision. On December 1, 2017, plaintiff submitted additional authority. (Doc. 20).

_____

[1] There are three complaints at issue in this case: 1) the original administrative due process complaint; 2) the amended administrative due process complaint; and 3) the complaint filed in this Court to initiate this action. I will refer to each complaint as the "due process complaint," the "amended due process complaint," and the "complaint," respectively.

On June 14, 2018, the Honorable Linda R. Reade, United States District Judge, referred this case to me for a Report and Recommendation. On June 27, 2018, I held a hearing on the merits of this case. On June 29, 2018, plaintiff filed a letter of supplemental authorities (Doc. 23), which the Court has considered. (*see* Doc. 25). With leave of Court, defendants filed a brief in response to plaintiff's supplemental authorities. (Docs. 25-26). Plaintiff then filed additional supplemental authorities. (Doc. 27). The Court did not grant leave for plaintiff to file his second supplemental authority, and plaintiff was not otherwise permitted to file such supplemental authority under either the Federal Rules of Civil Procedure or under the Local Rules. The Court has therefore not considered this authority, and plaintiff's second supplemental authority filing is hereby **stricken**.

For the following reasons, I respectfully recommend that the Court **reverse and remand** the ALJ's decision for further proceedings consistent with this Report and Recommendation. I further recommend that the Court **deny** plaintiff's request for attorneys' fees and costs, regardless of whether the Court adopts my Report and Recommendation.

## I.    *FACTUAL BACKGROUND*

Plaintiff was born on February 22, 1995, and was twenty years old when both the first administrative due process complaint was filed and when the amended administrative due process complaint was filed. (Docs. 8-1, at 3; 8-2, at 1 through 2, 20 through 31). The first due process complaint named only plaintiff's parents as complainants. (Doc. 8-2, at 1 through 2). When the due process complaint was amended, plaintiff was added as a party. (Doc. 8-2, 20 through 31). The ALJ assumed, for the sake of argument, that the amended due process complaint related back to the date the original complaint was filed. (*Id.*, at 38 n.1).

The respondents to the administrative action—and the defendants in the instant action—are "local education agencies." (Doc. 13, at 3). Plaintiff attended school in the Dubuque Community School District until he graduated from high school. (*Id.*). Although it is not clear what role Keystone Area Education Agency played, neither Keystone Area Education Agency nor Dubuque Community School District has alleged that either defendant is an improper defendant.

The parties do not dispute the ALJ's factual findings. Rather, all points of contention are strictly legal issues. I will, therefore, rely on the ALJ's factual findings:

> [Plaintiff] was 20 years old when his parents filed the complaint[2] initiating this action. [Plaintiff] graduated from [high school] on May 26, 2013. In his senior year, [plaintiff] was a member of the National Honor Society.
>
> During the whole of his enrollment at [defendants' educational institutions, plaintiff] was not identified as a child with a disability in obtaining an education, also known as an "eligible individual." *See* 281 IOWA ADMIN. CODE 41.22, 41.8 (2015).[3] Thus, [plaintiff] never ha[d] an Individualized Education Program[,] or[,] IEP. 281 IOWA ADMIN. CODE 41.22.[4] There is no evidence that he was ever evaluated for purposes of ascertaining whether he was an eligible individual.
>
> [Plaintiff] is now an independent adult. He has no court-appointed guardian.

---

[2] The "complaint," as referenced by the ALJ is the same complaint that I refer to as the due process complaint. To avoid confusion between the complaint brought in this Court and the administrative complaints, I will continue to refer to the administrative complaints as the "due process complaint," and as the "amended due process complaint."

[3] The ALJ cited 441 IOWA ADMIN. CODE 41.8 in support of this proposition. The section cited, however, was rescinded in 1997. Based on my understanding of the ALJ's factual analysis, I believe the section I have cited, instead, accurately portray the ALJ's intended meaning.

[4] The ALJ cited 441 IOWA ADMIN. CODE 41.22 in support of this proposition. Chapter 441, Section 41.22, however, addresses eligibility factors for those involved in family investment programs. This case does not deal with such programs. I have once again changed the citation to reflect what I believe to be the ALJ's intended meaning.

4

The relief sought in the original complaint was compensation to [plaintiff] for ongoing anxiety and PTSD (post-traumatic stress disorder), payment for ongoing counselling, and for "all the educators to be held accountable." The relief sought in the amended complaint (that does not duplicate the request in the original complaint) was compensatory education and damages for the "actual and consequential damages [that] [plaintiff] suffered because of [defendants'] actions and omissions in their behavior toward [plaintiff]."

[Plaintiff] was diagnosed with a social anxiety disorder in 2006, at which time [plaintiff] was in junior high school. The amended complaint alleges, and it is assumed true for the sake of argument, that [plaintiff's mother] provided this information to [defendants] in 2006. It is also assumed *arguendo* that [plaintiff's mother] informed [defendants] in the spring of 2012 that [plaintiff] suffered from PTSD.

[Plaintiff] was the target of extreme bullying throughout his years at [defendants' educational institutions], star[t]ing in elementary school and continuing through the first semester of his senior year. He completed his final semester of high school by taking online courses at home, for which [defendants] granted him credit. Because of his anxiety, the Complainants allege that [plaintiff] did not learn social skills that would help him cope with the bullying. They aver that [plaintiff] could not learn these social skills without specially designed instruction "outside of the general education environment."

In the spring of 2012, [defendants] began to develop a Section 504 plan for [plaintiff], which was finalized prior to his senior year. The 504 plan addressed [plaintiff's] reaction to emotionally upsetting situations, allowing him to "leave the building when he is experiencing a stress reaction."

(Doc. 8-2, at 36 (record citations omitted) (footnotes added)).

In addition to his anxiety and PTSD, plaintiff also has autism and Ehlers-Danlos Disorder, a connective tissue disorder that causes plaintiff difficulty in fine manipulation. (Docs. 8-2, at 26; 11, at 2). Although plaintiff is alleged to have had autism since birth, while plaintiff was in school, he and his parents "did not know enough to realize that [plaintiff] had an autism spectrum disorder [that] interfered with his educational

5

progress." (Doc. 8-2, at 20-21). Thus, plaintiff's autism was not a known cause of plaintiff's educational difficulties until after plaintiff graduated from high school.

## II. PROCEDURAL BACKGROUND

After plaintiff's parents initiated the administrative action below, defendants filed a motion to dismiss the administrative due process complaint, arguing that plaintiff's parents, as the sole complainants,[5] did not have standing to litigate the claims presented. (Doc. 8-2, at 15 through 16). Defendants further argued that the statute of limitations for any claims that may have existed had already elapsed and the claims were, therefore, barred. (*Id.*). In response to the motion to dismiss, complainants requested additional time to file an amended due process complaint. (Doc. 8-2, at 18). The ALJ granted the request. (*Id.*). The amended due process complaint more fully discussed the specifics of complainants' allegations and requested "compensatory related services in the area of mental health therapy," as well as monetary damages and attorneys' fees and costs. (Doc. 8-2, at 20 through 31). The amended due process complaint also added Alex Wehrspann—plaintiff in this case—as a co-complainant, alongside both of his parents.[6] (*Id.*, at 20).

---

[5] Defendants' motion to dismiss the administrative due process complaint only acknowledged plaintiff's mother as a complainant and therefore only argued as to whether plaintiff's mother had standing. (Doc. 8-2, at 15). The other administrative records, however, reflect plaintiff's mother and father as co-complainants. (*See* Doc. 8-2, at 1, 5, 7, 9, 12, 18, 20, 35). Defendants' pleadings, both in this Court and before the ALJ, indicate that defendants likely would have argued that neither parent had standing, had defendants properly read the pleadings as including both of plaintiff's parents as co-complainants. I will, therefore, proceed as though the standing argument had been made as to each of plaintiff's parents.

[6] Plaintiff represents to this Court that the amended due process complaint made him the complainant "in place of his parents," which indicates a belief that plaintiff's parents were no longer co-complainants as of the filing of the amended due process complaint. (Doc. 11, at 7). This, however, is a misreading of the amended due process complaint. The amended due process complaint reflects plaintiff and both of his parents as co-complainants, and the ALJ recognized all three as co-complainants. (Doc. 8-2, at 20; *see* Doc. 8-2, at 35).

On June 25, 2015, the ALJ held a hearing on the motion to dismiss. (Doc. 8-3). The hearing was held solely to discuss the legal issues surrounding the motion to dismiss. Neither party offered factual evidence, nor did the ALJ request any such evidence. Further, the ALJ did not consider plaintiff's disabilities. The inquiries were limited to whether the amended due process complaint had to be dismissed for lack of standing or based on an expired statute of limitations.

The ALJ ultimately entered an order dismissing the due process complaint and the amended due process complaint. (Doc. 8-2, at 35 through 40). The ALJ found that plaintiff had standing to pursue his claims, but that his parents—who were co-complainants below—did not have standing to pursue the claims asserted. (Doc. 8-2, at 37 through 38).

The ALJ went on to find that the two year statute of limitations within which a complainant may file an administrative complaint expired on May 26, 2015, two years after plaintiff graduated from high school. (Doc. 8-2, at 38). The ALJ reasoned—and the parties do not contest—that no claim could accrue after plaintiff graduated. The original due process complaint was filed on May 19, 2015. (*Id.*). The ALJ therefore concluded that the actionable period was May 19, 2013, through May 26, 2013. (*Id.*).

In determining whether the statute of limitations had expired, the ALJ addressed whether either of two statutory exceptions to the statute of limitations applied. As explained by the ALJ, complainants argued that the statute of limitations period was tolled under 20 U.S.C. § 1415(f)(3)(D)(ii) because defendants did not notify plaintiff that his parents' rights under the IDEA transferred to plaintiff upon plaintiff reaching the age of majority. (Doc. 8-2, at 38 through 39 (citing 20 U.S.C. 1415(m); 281 IOWA ADMIN. CODE 41.520)). Plaintiff contends that the ALJ mischaracterized complainants' arguments. (Doc. 11, at 8).

The ALJ found that the procedural protections described, such as the tolling provision, "are predicated on a child being identified as an eligible child." (Doc. 8-2, at 38). The ALJ went on to define "a child with a disability" as one who requires "special education and support and related services." (*Id.*, at 39). Turning to the Code of Federal Regulations, the ALJ found that a child "'who only needs a related service and not special education . . . is not a child with a disability . . . .'" (*Id.* (omissions in original) (citing 34 C.F.R. 300.8(a)(2)(i))). The ALJ "[took] the assertions in the complaint and amended complaint at face value" and found that plaintiff required only related services and not special education. (*Id.*). Because the ALJ found that plaintiff required only related services, the ALJ concluded that plaintiff was not a child with a disability. (*Id.*). Because the ALJ found that plaintiff was not a child with a disability, the ALJ concluded that the IDEA's procedural safeguards did not apply to plaintiff and the statute of limitations was, therefore, not tolled. (*Id.*). The ALJ did not address whether the statute of limitations barred any claims that may have accrued from May 19, 2013, through May 26, 2013. Plaintiff now appeals the dismissal of the due process complaint, but does not contest the ALJ's determination as to any individual's standing.

### III.    JURISDICTION

This Court has jurisdiction under 20 U.S.C. 1415(i)(2)(A) (2004) to hear the administrative appeal of the decision issuing from the Iowa Department of Education. (Doc. 8-2, at 35-40). The complaint in the instant case was timely brought pursuant to the proper procedures, and the Court may, therefore, hear this case.[7]

---

[7] The Court notes that although the complaint was timely brought following the ALJ's order dismissing the administrative due process complaint, this issue of timeliness is distinct from the statute of limitations issue, which will be discussed *infra*.

# IV. APPLICABLE LAW

Congress provided that the reasons for enacting the IDEA were, *inter alia*,

> to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; [and] to ensure that the rights of children with disabilities and parents of such children are protected . . ..

20 U.S.C. § 1400(d)(1)(A)-(B).[8]

## A. Definitions

The term "child with a disability" is defined as a child "with intellectual disabilities, . . . serious emotional disturbance . . ., orthopedic impairments, autism, . . . other health impairments, or specific learning disabilities," *and* "who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A). A state and the local education agency may, at their discretion, include within the definition of "child with a disability," a child who is aged three through nine years of age, and who experiences developmental delays, "as defined by the [s]tate," in, *inter alia*, cognitive development, communication development, social or emotional development, or adaptive development, *and* "who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(B).

"Related services" means "such developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special

---

[8] The IDEA was amended substantially in 2004. Many of those amendments are relevant to this case. Most specifically, the 2004 amendments added a statute of limitations and tolling provision, both of which are discussed *infra*. These amendments could affect the outcome of this case if plaintiff pursues claims accruing prior to 2004. Currently, however, plaintiff has not been able to affirmatively represent whether such claims exist and I will not, therefore, offer a recommendation as to how these amendments affect plaintiff's claims, if at all. Where the amendments are substantive and relevant, I have noted as such, *infra*.

education, and includes the early identification and assessment of disabling conditions in children." 20 U.S.C. § 1401(26).

Congress defined the term "free appropriate public education" to mean:

special education and related services that—

    (A) have been provided at public expense, under public supervision and direction, and without charge;

    (B) meet the standards of the State educational agency;

    (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and

    (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). Title 20, United States Code, Section 1414(d), in turn, sets forth those matters that must be included in an individualized education program ("IEP").

## B.   *Obligations Imposed Under IDEA*

The IDEA imposes certain obligations upon those states that accept federal funding under the IDEA. Iowa accepts federal funding under the IDEA and is thus bound by its terms.[9]

### 1.   *"Child Find"*

The IDEA requires states to identify, locate, and evaluate "[a]ll children with disabilities residing in the State, . . . who are in need of special education and related services," "regardless of the severity of their disabilities." 20 U.S.C. § 1412(a)(3)(A). A state must ensure that an IEP is "developed, reviewed, and revised for each child with

---

[9] It does not appear that either party disputes whether Iowa is subject to the terms of the IDEA. Iowa did, in fact, accept funding under the IDEA in FY12, which encompasses the date on which plaintiff graduated from high school. U.S. DEP'T OF EDUC., *Fiscal Year Allocations for Grants to States: Individuals with Disabilities Education Act—Part B, Section 611—Table 1* (Nov. 7, 2013), https://www2.ed.gov/fund/grant/apply/osep/2012apps.html (navigate to "611" under "Part B State Allocation Tables"). I am relying on this acceptance of funding in FY12 as representative and will assume, *in arguendo*, that Iowa accepted IDEA funding in each relevant fiscal year. In the absence of arguments to the contrary, I will likewise assume that defendants were subject to the IDEA at all relevant times under 20 U.S.C. § 1413.

a disability." 20 U.S.C. § 1412(a)(4). Local education agencies, such as defendants, are further required to assess children in all areas of suspected disability. 20 U.S.C. § 1414(b)(3)(B).

### 2. *Procedural Safeguards and IDEA Statute of Limitations*

In the interest of maintaining a free appropriate public education, entities receiving funding under the IDEA must establish certain procedural safeguards for both children with disabilities and those children's parents.

One such safeguard is the requirement that parents be provided with written prior notice "whenever the local educational agency . . . refuses to initiate or change[ ] the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." 20 U.S.C. § 1415(b)(3). The "written prior notice" must include:

> (A)    a description of the action proposed or refused by the agency;
> (B)    an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action;
> (C)    a statement that the parents of a child with a disability have protection under the procedural safeguards of this subchapter . . .;
> (D)    sources for parents to contact to obtain assistance in understanding the provisions of this subchapter; [and]
> . . . .
> (E)    a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. 1415(c)(1). In addition to the written notice required under Section 1415(c)(1), parents must be provided with "a full explanation of the procedural safeguards" mentioned in Section 1415(c)(1)(C)—this notice, which is separate from the "written prior notice," must include:

> [A] full explanation of the procedural safeguards . . . available under this section . . . relating to—

11

> (A)     independent educational evaluation;
>
> (B)     prior written notice;
>
> . . . .
>
> (E)     the opportunity to present and resolve complaints, including—
>
> > (i)     the time period in which to make a complaint;[10]
>
> . . . .
>
> (I)     due process hearings . . .;
>
> (K)     civil actions, including the time period in which to file such actions; and
>
> (L)     attorneys' fees.

20 U.S.C. § 1415(d)(1)(A), 1415(d)(2) (footnote added).

Entities receiving funding must also provide:

> An opportunity for any party to present a complaint[11]—
>
> > (A)     with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and
> >
> > (B)     which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this subchapter, in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph.[12]

---

[10] Prior to the 2004 amendments, what is now Section 1415(d) included no reference to "the time period in which to make a complaint." *See* 20 U.S.C. § 1415(d)(2) (1999). This omission could become relevant if plaintiff argues that conduct prior to the 2004 amendments gave rise to a claim and that the statute of limitations was tolled due to defendants' failure to provide notice of the procedural safeguards.

[11] State education agencies must develop a form to assist parents in filing their complaint. 20 U.S.C. § 1415(b)(8) (2004).

[12] The IDEA did not contain its own statute of limitations prior to the 2004 amendments. This could become relevant if plaintiff alleges that conduct occurring prior to the 2004 amendments gave rise to a claim and defendants argue that the statute of limitations had elapsed under the applicable law. This issue, however, is only speculative currently, as plaintiff has not been able

20 U.S.C. 1415(b)(6) (footnotes added). When a complaint is filed under Section 1415(b)(6), the parents "shall have an opportunity for an impartial due process hearing." 20 U.S.C. 1415(f)(1)(A). The timeline for requesting a due process hearing is the same as the timeline for bringing a complaint under Section 1415(b)(6) and is, likewise, subject to Section 1415(f)(3)(D). 20 U.S.C. § 1415(f)(3)(C). Title 20, United States Code, Section 1415(f)(3)(D),[13] in turn, provides:

> The timeline described [*supra*] shall not apply to a parent if the parent was prevented from requesting the hearing due to—
> . . . .
>> (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

## C.    Administrative Process

When presiding over a due process hearing, an ALJ's decision:

>> shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education.  . . . In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies—
>>> (I)    impeded the child's right to a free appropriate public education;
>>> (II)    significantly impaired the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
>>> (III)    caused a deprivation of educational benefits.

---

to affirmatively represent whether such claims exist.  I will not, therefore, offer a recommendation with respect to this issue.

[13] Because the prior version of the IDEA did not contain a statute of limitations, it likewise did not contain a tolling provision.

20 U.S.C. § 1415(f)(3)(E). During such a hearing, all parties involved have "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." 20 U.S.C. § 1415(h)(2).

### D. Transfer of Rights

The IDEA specifically contemplates the transfer of rights from a parent to a child with a disability upon the child reaching the age of majority. The statute provides:

> A State . . . may provide that, when a child with a disability reaches the age of majority under State law . . . the agency shall provide any notice required . . . to both the individual and the parents; all other rights accorded to parents under this subchapter transfer to the child . . . .

20 U.S.C. § 1415(m)(1). Further, a parent is not precluded "from filing a separate due process complaint on an issue separate from a due process complaint already filed." 20 U.S.C. § 1415(o).

In Iowa, when a child reaches eighteen years of age, the rights previously afforded to the child's parents under the IDEA transfer to the child. 281 IOWA ADMIN. CODE 41.520(1) (2015); IOWA CODE § 599.1 (2015).[14] Further, when such rights transfer, the local education agency must provide all required notices to both the parents and to the child; this includes notice of the transfer of rights. 281 IOWA ADMIN. CODE 41.520(1)(c).

---

[14] All citations herein refer to the codified authority in only one year. As the allegations in this case span many years, it is possible that the applicable laws could have been amended over the course of time, which could, in turn, cause different versions of the same law to govern separate claims. Because this issue has not been fully briefed, however, I have chosen to cite to each law in a specified year as representative of the applicable law. The parties could argue that the governing law could be different in other years based on a different iteration of the same law. This is a question that I have not addressed.

14

### E.    Judicial Review

The tasks of a court reviewing an ALJ's decision under the IDEA are laid out, generally, in the statute:

> In any action brought under this paragraph, the court—
> (i)    shall receive the records of the administrative proceedings;
> (ii)    shall hear additional evidence at the request of a party; and
> (iii)    basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C).  The Court may, in its discretion, award reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability."  20 U.S.C. 1415(i)(3)(B)(i).

The Court must give "due weight" to the administrative proceedings below.  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982).

> This somewhat unusual standard of review is less deferential than the substantive-evidence standard commonly applied in federal administrative law.  But we have recognized that this limited grant of deference—"due weight"—is appropriate in IDEA cases because the ALJ had an opportunity to observe the demeanor of the witnesses and because a district court should not substitute its own notions of sound educational policy for those of the school authorities.

*K.E. ex rel. K.E. v. Indep. Sch. Dist. No. 15*, 647 F.3d 795, 803 (8th Cir. 2011) (internal citations, quotation marks, and alterations omitted).  This standard requires a district court to "thoroughly review[ ] the administrative record and determine[ ] that a preponderance of the evidence [does or] d[oes] not support the ALJ's conclusion."  *Id.*, at 804.  "According to this 'modified' *de novo* standard of review, a district court is required to make findings of fact based on a preponderance of the evidence contained in

the complete record, while giving some deference to the fact findings of the administrative proceedings." *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001).

Because IDEA questions can frequently be mixed questions of law and fact, a district court may properly reach a conclusion different than that of the ALJ due to a different understanding of the law. *K.E.*, 647 F.3d at 804. Such a conclusion does not necessarily have any bearing on whether the court weighed the facts differently than did the ALJ. *Id.*

Ordinarily, a district court must engage in a two-part inquiry when reviewing IDEA cases. *Rowley*, 458 U.S. at 206-07. The first question is "whether the school district followed the procedures set forth in the IDEA." *K.E.*, 647 F.3d at 804 (citing *Rowley*, 458 U.S. at 206-07)). The Court must then ask whether the resulting individualized education program was "'reasonably calculated to enable the child to receive educational benefit.'" *Id.* (quoting *Rowley*, 458 U.S. at 206-07). Here, however, the issues before the Court are purely legal in nature and deal with the ALJ's finding that plaintiff was an ineligible student under the IDEA. The second step must, therefore, be adapted to consider whether the ineligibility determination was proper. *N.G. v. District of Columbia*, 556 F. Supp.2d 11, 30 (D.D.C. 2008). The Court may review the ALJ's conclusions of law *de novo*. *Hansen ex rel. J.H. v. Republic R-III Sch. Dist.*, 632 F.3d 1024, 1026 (8th Cir. 2011) (concluding that the district court "was free to consider the [administrative] panel's legal conclusions de novo" where the parties "disput[ed] only the legal conclusion to be drawn from the facts in the record").

## V.    LEGAL ARGUMENTS

The intricacies of the arguments made before this Court make it helpful to recount those arguments prior to analyzing the merits of the case. The parties' arguments to this Court are as follows:

## A.    Plaintiff's Arguments

Plaintiff asserts that his claims are based on federal law, not state law and that the IDEA, along with its statute of limitations, governs this case.   (Doc. 11, at 11). Defendants seem to accept this proposition in their brief to this Court.   (*See* Doc. 13, at 10-11).   The ALJ dismissed the due process complaint and the amended due process complaint for plaintiff's alleged failure to make a threshold showing that plaintiff was a child with a disability.   (Doc. 8-2, at 39-40).

I will first address the merits of the statute of limitations issue before turning to the threshold issue.   Proceeding in this fashion will allow me to explain the basis for plaintiff's argument that the ALJ erred prior to discussing the alleged error itself. Although plaintiff has also requested that his attorneys' fees and costs be awarded, I see no need to separately address either plaintiff's or defendants' arguments on that point in this section.

### 1.    Merits of Statute of Limitations Issue

Plaintiff argues that defendants failed in their child find obligations by failing to identify, locate, and evaluate plaintiff as an individual with a disability who required special education and related services.   (Doc. 11, at 9).   Throughout the evaluation process, plaintiff argues, school districts—here, defendants—are required to give a student's parents certain notices at certain points; plaintiff asserts that the requirement to provide such notices is one of many procedural safeguards set forth by the IDEA.   (*Id.*, at 10-11).   Plaintiff explains that "the time period in which to file a [due process] complaint" must be included in this notice.   (*Id.*, at 11 (alteration in original) (citing 34 C.F.R. § 300.504(c)(5)(i))).   Here, because defendants allegedly failed in their child find obligations, plaintiff argues that defendants subsequently failed to comply with the IDEA's procedural safeguards, including the requirement that plaintiff's parents be notified of the time during which they may file a due process complaint to request a due

17

process hearing. (*Id.*). During oral argument, plaintiff elaborated on this argument and offered that defendants' child find obligations were triggered for two reasons: 1) plaintiff's parents repeatedly made defendants aware that plaintiff was struggling in school, and plaintiff asserts that raising such awareness was sufficient to trigger defendants' child find obligations; and 2) prior to the 2012-2013 school year, defendants took steps to accommodate plaintiff, which, plaintiff argues, showed a recognition that, at the very least, plaintiff should have been evaluated as a potential child with a disability.

Plaintiff further asserts that where a parent is "'prevented from requesting the [due process] hearing due to the local education agency's withholding of information from the parent,'" the two-year statute of limitations does not apply. (*Id.*). Plaintiff urges that defendants' failure to notify his parents of their right to request a due process hearing amounts to defendants "withholding" information within the meaning of the IDEA. (*Id.*). The parties seem to be in relative agreement that the rights plaintiff's parents had as of plaintiff reaching age eighteen transferred to plaintiff on his eighteenth birthday. Plaintiff reasons, then, that because the statute of limitations did not apply to plaintiff's parents' claims due to defendants' failure to notify, the statute of limitations likewise does not apply to plaintiff's claims. (*Id.*, at 11, 13-14). Plaintiff concludes that because the statute of limitations does not apply, plaintiff's claims were timely brought. (*Id.*, at 11).

### 2.    *Threshold Showing of "Child with a Disability"*

The ALJ, however, did not reach the merits of the statute of limitations issue because she found that plaintiff "was not a child with a disability," and the tolling provision therefore did not apply to plaintiff's claims. (Doc. 8-2, at 39). Otherwise stated, the ALJ found that if a complainant is unable to make a threshold showing of being a child with a disability, the IDEA's procedural safeguards, including the tolling provision, are inapplicable. Plaintiff argues that the ALJ could not have properly determined whether plaintiff had a disability without first conducting a due process

18

hearing. (Doc. 11, at 11-12, 14-17). Making such a finding without conducting a due process hearing, plaintiff argues, amounts to a deprivation of plaintiff's right to be assessed to determine whether he was eligible for a special education. (*Id.*). Therefore, plaintiff concludes, the ALJ should not have found that plaintiff was ineligible for the protections afforded by the IDEA. (*Id.*).

### B. Defendants' Arguments

Defendants assert that "[t]he only issue presented for review in this case is whether plaintiff's IDEA due process complaints were barred by limitations." (Doc. 13, at 9). Defendants further assert that absent an exception to the statute of limitations, the statute of limitations would have expired on August 12, 2014. (*Id.*, at 10). Defendants reach this conclusion by reading plaintiff's due process complaint as alleging violations only up to August 12, 2012. (*Id.*). Beginning on August 12, 2012, plaintiff began his final school year, in which he attended only one class in person each day and completed the remainder of his classes online. (Doc. 8-2, at 36). Defendants argue that plaintiff has not alleged that any violations occurred after the date this "accommodation" was first provided. (Doc. 13, at 10).

Defendants adopt the ALJ's argument that plaintiff did not qualify as a "child with a disability," because plaintiff required only "related services." (*Id.*, at 11-12). Regardless of plaintiff's eligibility status, however, defendants argue that at least one of three events must take place before the obligation to provide procedural safeguard notices is triggered. (*Id.*, at 11). The three events, as defendants recount them, are: 1) the student is referred for, or the parents request, an evaluation; 2) the parents file a complaint; or 3) the parents specifically request certain forms. (*Id.*). Defendants assert that because none of the three events occurred, defendants had no obligation to provide plaintiff or his parents with any sort of procedural safeguard notice. (*Id.*, at 11-12).

## VI.    DISCUSSION

The central issue before the Court is whether the ALJ could, on the record before her, properly reach the conclusion that plaintiff was not a child with a disability and, therefore, was not entitled to the procedural safeguards set forth in the IDEA. Further, the statute of limitations issue is properly before this Court and I will, as such, address the issue.

### A.    *ALJ's Determination that Plaintiff Was Not a Child With a Disability*

The ALJ stated as follows:

> Taking the assertions in the complaint and amended complaint at face value, [plaintiff] needed only related services and not special education. Accordingly, he was not a child with a disability. The procedural safeguards did not apply to [plaintiff] or his parents.

(Doc. 8-2, at 39). The ALJ cited no law in support of this conclusion.

The Court need not determine whether plaintiff was a child with a disability. The Court may instead address the question of whether the ALJ had sufficient information to allow her to reach the conclusion that plaintiff was not a child with a disability. Indeed, answering this question, as opposed to the more substantive issue of whether plaintiff was disabled, is consistent with plaintiff's proposed remedy before this Court: remand to the ALJ for a due process hearing to determine whether plaintiff was disabled within the meaning of the statute. I conclude that the record before the ALJ was insufficient to support a conclusive finding that plaintiff was not a child with a disability within the meaning of the IDEA.

The record before the ALJ at the time of her decision was scant. Substantively, it consisted of the due process complaint, the amended due process complaint, plaintiff's partially redacted high school transcript, and the motion to dismiss. The parties also offered legal argument during a hearing on the motion to dismiss. No evidence, however, was either requested, offered, or received at any time prior to the ALJ granting the motion

20

to dismiss. The ALJ did not identify the "related services" plaintiff received, nor did she explain or identify what would have been necessary to make a showing that plaintiff needed special education. The ALJ did not explain why she determined plaintiff did not require special education, the ALJ did not explain what she understood "special education" to mean, it is not clear whether the ALJ's understanding of "special education" was correct, and it is not clear whether plaintiff was entitled to "special education," under either the ALJ's understanding of the phrase or, if improper, under the correct understanding of the phrase.

The ALJ purportedly took the allegations in the amended due process complaint "at face value," and, presumably, found that there was no pattern of facts that could exist under the amended due process complaint that would render plaintiff a disabled child. (*Id.*). This Court is now tasked with determining whether the ALJ's ineligibility determination was proper under the IDEA. I, however, am unable to determine whether the ineligibility determination was proper, simply because the ALJ did not reach the merits of the issue. Further, even viewing the allegations in the due process complaint and the amended due process complaint at face value, just as the ALJ purportedly did, I am still unable to conclusively determine whether plaintiff is an eligible individual. This is a case where an eligibility determination is inappropriate in the absence of the parties being given an opportunity to present evidence and argument on the issue. *See Kroot ex. rel. Kroot v. District of Columbia*, 800 F. Supp. 976, 983 (D.D.C. 1992) (emphasizing the importance of weighing the evidence in making an eligibility determination). Had plaintiff been given the opportunity to present evidence or, at least, testimony on the issue of whether he was a disabled child, perhaps the ALJ would have had a more complete record that would have led her to a different conclusion. With respect to the issue of whether plaintiff was an eligible individual, I therefore recommend that the Court **reverse and remand** the ALJ's decision for a more thorough examination of whether plaintiff

was a child with a disability within the meaning of the IDEA. As set forth below, I specifically **reject** the notion that the reasons the ALJ set forth for dismissing the due process complaint and the amended due process complaint rendered such dismissal proper.

This is not to say that a motion to dismiss an administrative complaint would never be proper in the context of the IDEA. Rather, my conclusion is that dismissal in *this* case was inappropriate. In the administrative action, defendants did not assert the theory that either the due process complaint or the amended due process complaint should be dismissed based on plaintiff's ineligibility. Defendants asserted only that the complaint should be dismissed based on the statute of limitations and based on plaintiff's mother's lack of standing. (Doc. 8-2, at 15-16). The ALJ, however, *sua sponte* raised the issue of whether the due process complaint and the amended due process complaint, together, were sufficiently pled to allow relief to be granted. Notably, the ALJ did not give the parties an opportunity to confront the issue of whether the complaint should have been dismissed on the grounds raised by the ALJ. This is especially important where, as here, the *factual determination* that plaintiff did not require special education led the ALJ to conclude that the complaint should be dismissed.

Although Iowa courts have, on rare occasions, condoned the *sua sponte* dismissal of cases, the Iowa Supreme Court has also cautioned that "when courts proceed *sua sponte*, any action taken must be done with restraint." *$99 Down Payment, Inc. v. Garard*, 592 N.W.2d 691, 695 (Iowa 1999) (citing *Rush v. Sioux City*, 240 N.W.2d 431, 439 (Iowa 1976)). I cannot find that the ALJ acted with such restraint in this case and I, therefore, cannot find that her dismissal of this case on grounds raised *sua sponte* was proper.

22

### B. Statute of Limitations

Having determined that the record was insufficient for the ALJ to dismiss the action based on her determination that plaintiff was not a child with a disability, I will now confront the issue of whether plaintiff's claim is barred by the statute of limitations set forth in the IDEA.[15] This will necessarily include a discussion of whether the alleged failure of defendants' child find obligations amounted to a refusal to evaluate plaintiff within the meaning of the IDEA's tolling provision. If defendants' child find obligations applied to plaintiff, *and* if defendants failed in their child find obligations with respect to plaintiff, *and* if failing in defendants' child find obligations amounts to a refusal to evaluate, only then will the tolling provision be applicable to plaintiff's claims.

If, however, all of these questions are not answered in the affirmative, the relevant inquiry will become whether plaintiff's amended due process complaint relates back to the date his parents filed their due process complaint. This is so because even if the statute of limitations was not tolled as to plaintiff's claim, plaintiff could have a viable claim with respect to the one week period from May 19, 2013, through May 26, 2013. This claim would only be viable, however, if the amended due process complaint relates back to the date the first due process complaint was filed. I will address both the tolling issue and the relation back issue because, as explained *supra*, the current record contains insufficient factual information to determine whether defendants' child find obligations

---

[15] During oral argument, all parties indicated that they were seeking a ruling on the statute of limitations issue. Defendants have since reconsidered, however, and have altered their position to reflect the following: "[I]f the Court believes that the record below is insufficient to rule, the Defendants/Appellees believe that the matter of the statute of limitations should be remanded to the Administrative Law Judge for further review." (Doc. 26, at 7). In altering their position as to the statute of limitations, defendants maintain their position that the Court should affirm the ALJ's ruling on other grounds. (*Id.*). I find the record insufficient to reach a ruling on the statute of limitations issue. I have, however, provided recommendations as to the applicable law that may govern the statute of limitations issue, depending on the ALJ's new findings of fact on remand.

applied to plaintiff and whether defendants failed in those child find obligations. As a result, even if I find that a failure to meet the child find obligations does amount to a refusal to evaluate, the ALJ could find that, factually, the child find obligations did not apply to plaintiff or that defendants did not fail in their child find obligations with respect to plaintiff.

### 1.    *Child Find*

Prior to the 2012-2013 school year, plaintiff was assessed a Section 504 plan. (Doc. 8-2, at 36). The parties do not contend that the plan was generated in response to defendants' child find obligations. Plaintiff does, however, contend that defendants' agreement to develop a 504 plan demonstrated that defendants knew plaintiff should have been evaluated under child find. Defendants' failure to evaluate plaintiff, plaintiff contends, amounted to a refusal to evaluate, thus triggering the IDEA's procedural safeguards. Plaintiff also argues that defendants were made aware that plaintiff had difficulty learning, as early as when plaintiff was in third or fourth grade. This awareness, plaintiff argues, was sufficient to trigger defendants' child find obligations. As before, plaintiff argues that the failure to adhere to child find amounted to a refusal to evaluate, thus triggering the IDEA's procedural safeguards. Importantly, if the procedural safeguards were triggered and defendants did not provide the required notices, the statute of limitations would have been tolled. 20 U.S.C. § 1415(f)(3)(D).

Defendants have not refuted the assertion that plaintiff's parents provided notice to defendants that plaintiff was having difficulty learning. Defendants have further not refuted plaintiff's assertion that plaintiff's parents provided such notice prior to the beginning of each relevant school year. These are factual determinations, however, and the record before me does not allow me to reach sound conclusions on either issue. I will therefore assume, *in arguendo*, that plaintiff's parents did indeed provide notice, prior to the start of each relevant school year, to defendants that plaintiff had difficulty

learning.  To be clear, this assumption is not a finding of fact.  It is merely an assumption that is being made to aid in the legal analysis I will now engage in.

It is not clear exactly what a local education agency must do to comply with its child find obligations, and the IDEA does not set forth what a local education agency must do to ensure compliance.  The case law indicates that the inquiry of whether the child find obligations have been met is highly fact intensive and is distinct with respect to each situation.  For instance, the District of Minnesota has found that where a school district is aware that a "student [is] struggling in school," the student should be evaluated.  *See Indep. Sch. Dist. No. 413, Marshall v. H.M.J. ex. rel. A.J., M.N.*, 123 F. Supp.3d 1100, 1110 (D. Minn. 2015).  The necessity for an evaluation is further emphasized where, in addition to knowing that a student is struggling, a school district is made aware that a student has been evaluated or diagnosed with a mental impairment, such as generalized anxiety disorder.  *Id.*  The District of Columbia has repeatedly held "that when a district is aware that a student *may* have a disability," the district is obligated to evaluate that child, commensurate with its child find duties.  *N.G.*, 556 F. Supp.2d at 27 (emphasis in original).  The same court has determined that parental inquiry as to whether the parent's child is eligible for an evaluation is sufficient to identify a child as one who "*may* have a disability."  *Id.*, at 28.  This is in line with the Ninth Circuit Court of Appeals' holding that "if a school district has notice that a child has displayed symptoms of a covered disability, it must assess that child in all areas of that disability."  *Timothy O. v. Paso Robles Unified Sch. Dist.*, 822 F.3d 1105, 1119-20 (9th Cir. 2016).

In this case, plaintiff alleges that his parents notified defendants of plaintiff's difficulties in school at the beginning of each school year, beginning as early as third or fourth grade, through plaintiff's graduation.  Assuming, *in arguendo*, that this contention is accurate, defendants did indeed have notice that plaintiff had learning difficulties and arguably should have been evaluated under the IDEA's child find provision, and

defendants should have evaluated plaintiff under child find.[16]   The record contains insufficient information for me to determine whether defendants met their obligation to evaluate plaintiff.  I will therefore assume, *in arguendo*, that defendants failed to evaluate plaintiff under child find.  I recommend that on remand, the Court instruct the ALJ to conduct an inquiry into whether plaintiff was a child who should have been evaluated under child find and, if so, whether defendants met their obligations in evaluating plaintiff under child find.

United States Supreme Court precedent indicates that where a school district has failed in its child find obligations, an injured party is not automatically precluded from seeking a remedy under the IDEA.  Specifically, the Supreme Court opined as follows:

> The District's position . . . conflicts with IDEA's "child find" requirement, pursuant to which States are obligated to "identif[y], locat[e], and evaluat[e]" "[a]ll children with disabilities residing in the States" to ensure that they receive needed special-education services.   [20 U.S.C.] § 1412(a)(3)(A); *see* § 1412(a)(10)(A)(ii).  A reading of the Act that left parents without an adequate remedy when a school district unreasonably failed to identify a child with disabilities would not comport with Congress' acknowledgment of the paramount importance of properly identifying each child eligible for services.
>
> Indeed, by immunizing a school district's refusal to find a child eligible for special-education services no matter how compelling the child's need, the School District's interpretation of § 1412(a)(10)(C) would produce a rule bordering on the irrational.  It would be particularly strange for the Act to provide a remedy, as all agree it does, when a school district offers a child inadequate special-education services but to leave parents without relief in the more egregious situation in which the school district unreasonably denies a child access to services altogether.

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009).

---

[16] As related *supra*, I recognize that certain of plaintiff's claims could be governed by a prior version of the IDEA, which did not contain a statute of limitations.  To the extent any claims or defenses may exist under the prior version, those claims and defenses have not been briefed.  I will, therefore, decline to comment on such issues.

It follows that the statute of limitations would be tolled under the IDEA's tolling provision if procedural safeguard notices are not given as a result of failed child find obligations. To hold otherwise would be to allow school districts greater protections for both failing in their child find obligations and notice obligations than would be afforded if a school district merely failed in its child find obligations. Stated otherwise, the procedural safeguards become relevant only if a local education agency withholds information that is otherwise required to be provided under the IDEA. 20 U.S.C. § 1415(f)(3)(D). A local education agency becomes obligated to provide such information, *inter alia*, upon its refusal to evaluate a child who is suspected to be disabled. 20 U.S.C. § 1415(b)(3). The child find obligations are a natural precursor to such an evaluation because by way of child find, local education agencies identify those children who should be evaluated.

If I were to find, however, that the tolling provision did not apply when an explicit refusal did not occur, local education agencies could circumvent the tolling provision by disregarding their child find obligations instead of refusing to evaluate. This, of course, would result in disabled children being found in a lesser proportion and local education agencies being able to assert a statute of limitations defense for their blatant disregard of their child find duties. This is just the type of situation the Supreme Court cautioned against when it found that it would be irrational "to leave parents without relief in the more egregious situation in which the school district unreasonably denied a child access to such services altogether." *Forest Grove Sch. Dist.*, 557 U.S. at 245.

### 2. Relation Back Doctrine

I will now turn to whether the amended due process complaint would relate back to the date the due process complaint was filed. The necessity of this inquiry is set forth *supra*. I reiterate, however, that if the factual showings on remand support the conclusion

27

that the statute of limitations was tolled, the amended due process complaint need not relate back to the date of the first due process complaint to be considered timely.

Although the amended due process complaint contained far more detailed allegations than the first due process complaint, the underlying claims remained unchanged. Likewise, even though the amended due process complaint named plaintiff as a party for the first time, plaintiff's claims were no different than the claims originally brought by his parents. Indeed, by all appearances, had plaintiff and his parents initially believed that only plaintiff had standing to pursue the claims asserted, it is unlikely that either the due process complaint or the amended due process complaint would have been materially different.

Under both Iowa law and federal law, when a complaint is amended to add a new plaintiff and the claims remain unchanged, the amended complaint generally relates back to the date of the original complaint, absent a showing of prejudice by the defendant. *Plubell v. Merck & Co., Inc.*, 434 F.3d 1070, 1071-72 (8th Cir. 2006); *Estate of Kuhns v. Marco*, 620 N.W.2d 488, 495-96 (Iowa 2000); *see also Cliff v. Payco Am. Credits, Inc.*, 363 F.3d 1113, 1131-32 (11th Cir. 2004) (explaining that certain circuits use a judicially created test to determine whether a complaint that adds new plaintiffs relates back to the date of the original filing). Under both federal law and Iowa law, the amended due process complaint should relate back to the date the due process complaint was originally filed, even though the amended due process complaint added plaintiff as a new plaintiff. The amended due process complaint should relate back because the substance of the claims at issue under the amended due process complaint was nearly identical to the substance of the claims under the due process complaint, and because defendants have neither alleged nor shown that they would be prejudiced by the amended due process complaint relating back. Indeed, aside from the plaintiffs, nothing about the litigation was altered by the substitution.

As such, I recommend that the Court find that the amended due process complaint does relate back to the date the due process complaint was filed. The significance of this recommendation is that even if the statute of limitations was not tolled under the IDEA, plaintiff could still have a viable claim for any claims that accrued between May 19, 2013, and May 26, 2013. Although any claims accruing between May 19, 2013, and May 26, 2013, may fail for some other reason, they should not fail due to the statute of limitations having elapsed.

###    C.    Attorneys' Fees and Costs

The IDEA provides that a "prevailing party" may recover its attorneys' fees and costs. 20 U.S.C. § 1415(i)(3)(B)(i). A plaintiff "prevails" "'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'" *Warner ex. rel. Warner v. Indep. Sch. Dist. No. 625*, 134 F.3d 1333, 1336 (8th Cir. 1998) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). If the Court adopts this Report and Recommendation, plaintiff will not have prevailed on the merits. Even if the Court rejects this Report and Recommendation, but only considers the matters addressed in the pleadings before the Court, plaintiff still will not have prevailed on the merits of his claim.

Plaintiff brought only procedural issues before this Court. Specifically, plaintiff argues that he was deprived of due process by the ALJ's failure to conduct a due process hearing prior to finding plaintiff disabled. Plaintiff has not requested that the Court rule of the merits of his IDEA claim, but rather seeks only procedural relief. As such, even if the Court were to grant plaintiff the complete relief he seeks before this Court, plaintiff's legal relationship with defendants will not be altered "in a way that directly benefits the plaintiff." *See id.* Therefore, regardless of whether the Court adopts my

Report and Recommendation, I recommend that the Court deny plaintiff's request for attorneys' fees and costs.

## VII. CONCLUSION

For the aforementioned reasons, I respectfully recommend that the Court **reverse and remand** the ALJ's decision for further proceedings consistent with this Report and Recommendation. Further, I respectfully recommend that the Court **deny** plaintiff's request for attorneys' fees and costs, regardless of whether the Court adopts my Report and Recommendation. Finally, plaintiff's second supplemental authority filing (Doc. 27) is hereby **stricken**.

**IT IS SO ORDERED** this 27th day of July, 2018.


_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa

30